IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOHNNY MENIFEE, )
)
    Plaintiff, )
v. ) NO. 1:07-cv-00011
) JUDGE HAYNES
THE CITY OF COLUMBIA, et al., )
)
    Defendants. )

## **MEMORANDUM**

Plaintiff, Johnny Menifee, filed this action under 42 U.S.C. § 1983 and the Tennessee Government Tort Liability Act ("TGTLA") against Defendants: Officer Jamiee [sic] Reed, individually and in his official capacity, Officer Michael Kash, individually and in his official capacity, and the City of Columbia.

Plaintiff's claims arise out of Defendants' stop and arrest of Plaintiff on September 26, 2004. In essence, Plaintiff alleges violations of his rights under the Fourth Amendment due to Defendant Kash's and Defendant Reed's (collectively, the "Defendant Officers") use of excessive force during his arrest. Plaintiff also asserts that the City of Columbia failed to train its employees properly, causing the violations at issue. Finally, Plaintiff asserts claims under state common law and the Tennessee Governmental Tort Liability Act for negligence, battery, and negligent supervision. Defendants filed an answer denying Plaintiff's claims and the parties proceeded with discovery.

Before the Court are Defendants' motion for summary judgment (Docket Entry No. 44), Plaintiff's motion for summary judgment (Docket Entry No. 48), and Plaintiff's motion to strike

the Defendants' expert report filed in support of Defendants' motion for summary judgment (Docket Entry No. 60).

In their motion for summary judgment, Defendants contend that there are no material factual disputes, and that Officers Kash and Reed are entitled to qualified immunity on Plaintiff's excessive force claim. Defendants further argue that Plaintiff's battery claim must fail because of the Officers' privilege to use force, and that Plaintiff's claims against the City of Columbia must fail because no custom, policy or procedure was the moving force behind the alleged violation of Plaintiff's constitutional rights.

In response to the Defendants' motion for summary judgment, Plaintiff argues that the beating of the Plaintiff by the Defendants was unjustified and that the Defendant Officers used excessive force in subduing Plaintiff. Plaintiff further argues that his state law claims are wholly valid due to the violation of Plaintiff's constitutional rights by the Defendants. Plaintiff makes no argument regarding his claims against the City of Columbia beyond reciting the original allegations from the Complaint.

In his own motion for summary judgment, Plaintiff makes conclusory allegations regarding his excessive force claim, and asserts without citation that the City of Columbia has failed to adequately train or institute a system of review regarding the use of force by officers. Plaintiff also asserts that the baton strikes by the Defendant Officers constitute battery.

In response to the Plaintiff's motion for summary judgment, the Defendants argue that Plaintiff has failed to support its arguments and that the Defendants were justified in utilizing, in their words, "everything but the kitchen sink" to subdue Plaintiff. Defendants further contend that this force was not excessive, and otherwise repeat arguments contained within their own

motion for summary judgment.

For the reasons set forth below, the Court concludes that Defendants' motion for summary judgment should be granted in part and denied in part. Plaintiff has failed to articulate any policy, procedure, custom, or practice that was the "moving force" behind the alleged constitutional violations of Plaintiff's rights. Additionally, the Court declines to address Plaintiff's state law claims under the TGTLA for reasons of comity. The Court also concludes that material factual disputes exist on Plaintiff's claims of excessive force against Defendants Kash and Reed. These factual disputes also preclude any qualified immunity for the Defendant Officers. For these reasons, the Court also concludes that Plaintiff's motion for summary judgment should be denied.

## I. Review of the Record[1]

On September 26, 2004, Defendant Kash encountered the Plaintiff in the City of Columbia, where the Plaintiff was seen walking near a business at 206 W. 4th Street. (Docket Entry No. 54, Defendants' Response to Plaintiff's Statement of Undisputed Facts, at ¶¶ 2-3). When the Plaintiff saw Defendant Kash, Plaintiff turned around and walked the other way. Id. at ¶ 4. At that time, Defendant Reed was in a police car in the adjacent parking lot, and when

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The Court concludes that except for Defendants Kash and Reed, there are material factual disputes. Thus, this section does not constitute a findings of fact under Fed. R. Civ. P. 56(d) on Plaintiff's excessive force claim against Defendants Kash and Reed.
-3-

Plaintiff saw Defendant Reed, he again turned and walked in the opposite direction. Id. at ¶¶ 5-6. Given Plaintiff's suspicious behavior and appearance near a closed business, the Defendant Officers began questioning the Plaintiff. Id. at ¶¶ 7-10.

Defendant Reed asked for the Plaintiff's identification, and checked that identification with the dispatcher for any outstanding warrants. (Docket Entry No. 63, Plaintiff's Response to Defendants' Statement of Undisputed Facts, at ¶¶ 26-27, 34). All parties agree that Plaintiff was initially cooperative and that Plaintiff was not under arrest. Id. at ¶¶ 28-31.

The subsequent events are disputed. At some point, Officer Reed went to check the rear of the business, though it is unclear whether he actually had time to examine whether the business had been broken into. Id. at ¶ 33. During this time, Defendant Kash asked Plaintiff to allow a pat down, and Plaintiff initially complied with this request. Id. at ¶ 35. Defendants assert that Plaintiff repeatedly put his hands in his pockets, and at one point Plaintiff's hand emerged gripping something that Defendant Kash could not see. Id. at ¶¶ 41-43, 47-48. Defendants further allege that as Defendant Kash reached for that item in Plaintiff's hand, Plaintiff hit Defendant Kash, knocking him backward. Id. at ¶¶ 50-51.

At this point, Defendants allege that Plaintiff and Defendant Kash became tied up in a fight, and Defendant Reed returned to help effectuate Plaintiff's arrest for assaulting a police officer. Id. at ¶¶ 52-59. According to Defendants, the struggle escalated, with the Defendant Officers using greater force along the approved force continuum as needed, including the use of an A.S.P. baton, chemical spray, and Taser. Id. at ¶¶ 63-91. Plaintiff then attempted to run away from the Defendant Officers, but was tripped and became entangled with Defendant Kash again. Id. at ¶¶ 91-99. Defendants then contend that Plaintiff attempted to grab Defendant Kash's

firearm, leading Defendant Reed to use a baton to repeatedly strike Plaintiff in the head, at which point Plaintiff stopped resisting and the Defendant Officers were able to handcuff Plaintiff. Id. at ¶¶ 101-115.

Plaintiff's version of events differs considerably. Plaintiff contends that when he grabbed for a cigarette pack in his pocket, Defendant Kash demanded the cigarette pack. Id. at ¶¶ 36-38. Plaintiff further alleges that Plaintiff then wiped his mouth, and Defendant Kash grabbed Plaintiff by the mouth and demanded to know what Plaintiff was putting in his mouth. Id. at ¶¶ 38-39. Plaintiff maintains he never put anything in his mouth. Id. at ¶ 122. At this point, Plaintiff alleges Defendant Kash began choking him and slammed him to the ground and Plaintiff was then beaten with batons and kicked, putting Plaintiff in fear for his life. Id. at ¶ 54-59. Plaintiff also maintains that he was not flailing his arms around and trying to hit Defendant Kash, as he was being choked at the time. Id. at ¶ 60. Plaintiff further alleges that while he was being beaten, he was told to "shut up." Id. at ¶ 73. At some point, Plaintiff was able to get to his feet and attempted to run because of his fear for his life, at which time he was Tasered. Id. at ¶ 78. Plaintiff was then subdued and beaten again, and finally alleges he was placed in the patrol car, bleeding, in severe pain, and barely able to breathe for thirty minutes. Id. at ¶¶ 97-103.

## II. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her

evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . ['W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and] . . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby, 477 U.S. at 257). Moreover, the Court of Appeals explained:

> The respondent must 'do more than simply show that there is some metaphysical

-7-

doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. September 19, 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" (quoting Liberty Lobby, 477 U.S. at 251-52)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Company, 791 F.2d. 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New International Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 494 U.S. 1091 (1990). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

-9-

Case 1:07-cv-00011 Document 66 Filed 05/04/09 Page 9 of 18 PageID #: 910

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the

Case 1:07-cv-00011   Document 66   Filed 05/04/09   Page 10 of 18 PageID #: 911

record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

### A. State Law Claims Under TGTLA

The Court first addresses Plaintiff's state law claims for negligence, battery and violation of the TGTLA. The Court declines to exercise its supplemental jurisdiction over those claims on the basis of comity. See Beddingfield v. City of Pulaski, 666 F.Supp. 1064 (M.D. Tenn. 1987), rev'd on other grounds 861 F.2d 968 (6th Cir. 1988). The TGTLA provides that Tennessee state courts have exclusive jurisdiction for Plaintiff's state law claims. Tenn Code Ann. § 29-20-307. The Beddingfield ruling on declination to entertain TGTLA claims retains its viability. Gregory v. Shelby County, 220 F.3d 433, (6th Cir. 2000); Fromuth v. Metro. Gov't of Nashville, 158 F.Supp.2d 787, 789 (M.D. Tenn. 2001); Spurlock v. Whitley, 971 F.Supp. 1166, 1185 (M.D. Tenn. 1997) aff'd sub. nom Spurlock v. Satterfield, 167 F.3d 995 (6th Cir. 1999). As such, Defendants' motion for summary judgment is granted with regard to Plaintiff's state law claims that are hereby dismissed without prejudice.

## B. Official Capacity and Failure to Train Claims

Defendants contend that the undisputed facts establish that officers are extensively trained to comply with the for arrest and that there are adequate policies for the use of reasonable force. Plaintiff has offered only conclusory allegations that the City of Columbia has failed to train its officers properly, but cites to no evidence, interrogatories, deposition testimony, or documents that support its position.

A claim against any of the Defendants in their official capacities is a claim against the City of Columbia. Leach v. Shelby County Sheriff, 891 F.2d 1241, 1247-48 (6th Cir. 1989). In some instances, a police officer, in his official capacity, can be deemed to represent the municipality. Brandon v. Holt, 469 U.S. 464, 471-72 (1985). To impose liability against Defendants in their official capacity imposes liability against the City of Columbia, for which Plaintiff must establish a policy or practice. City of St. Louis v. Praprotnik, 485 U.S. 112, 124-26, 127 (1988). Moreover, Plaintiff must show that the policy caused the constitutional violation and that the City of Columbia was responsible for the violation. Collins v. City of Harker Heights Texas, 503 U.S. 115, 120 (1992). For his failure to train claim, Plaintiff must prove that the City of Columbia was deliberately indifferent to the need for training on the acts at issue. City of Canton v. Harris, 489 U.S. 378, 385, 388-91 (1989).

Here, Plaintiff has not demonstrated any deliberate indifference in the training of police officers on the use of force or effectuating arrests. Plaintiff has not offered any expert or other proof that the City of Columbia's policies caused Plaintiff's injuries. The facts here show an isolated instance in which it is disputed as to whether Plaintiff's actions justified the officers' use of physical force, chemical spray, and Taser in effectuating his arrest. Plaintiff's lack of citations

and conclusory allegations do not prove that the City of Columbia "ignored a history of abuse and was **clearly on notice** that the training in this particular area was deficient and likely to cause injury." St. John v. Hickey, 411 F.3d 762, 776 (6th Cir. 2005) (emphasis added).

Thus, the Court concludes that absent proof of a City of Columbia policy evincing deliberate indifference as to the cause of the Plaintiff's alleged injuries, the City of Columbia and the named Defendants in their official capacities are entitled to summary judgment on the Plaintiff's failure to train claims.

### C. Excessive Use of Force Claim

For Plaintiff's excessive use of force claim, Defendants assert qualified immunity as a defense. The Court must first determine whether a constitutional violation has been properly alleged before deciding the qualified immunity issue. In Siegert v. Gilley, 500 U.S. 226, 231 (1991), the Supreme Court addressed the proper analytical framework for determining qualified immunity and the first step is to decide if a federal right is presented.

> We have on several occasions addressed the proper analytical framework for determining whether a plaintiff's allegations are sufficient to overcome a defendant's defense of qualified immunity asserted in a motion for summary judgment. Qualified immunity is a defense that must be pleaded by a defendant official. Gomez v. Toledo, 446 U.S. 635 (1980); Harlow, 457 U.S. at 815. Once a defendant pleads a defense of qualified immunity, "[o]n summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. . . . Until this threshold immunity question is resolved, discovery should not be allowed." Id. at 818.
>
> * * *
>
> In Harlow we said that "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." Harlow, supra, at 818 (emphasis added). <u>A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the</u>

-13-

Case 1:07-cv-00011   Document 66   Filed 05/04/09   Page 13 of 18 PageID #: 914

<u>determination of whether the plaintiff has asserted a violation of a constitutional right at all. Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits.</u> One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit. In <u>Mitchell v. Forsyth</u>, <u>supra</u>, we said:

> Harlow thus recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.

<u>Id.</u> at 231-32.

The Fourth Amendment governs Plaintiff's excessive use of force claims involving arrests of citizens. In <u>Graham v. Connor</u>, 490 U.S. 386 (1989), plaintiff, who was not convicted of any criminal charges, filed a § 1983 action to recover damages from law enforcement officers who used physical force against him after an investigatory stop. Initially, the Court distinguished use of force claim by citizens versus such claims by convicted prisoners.

> This case requires us to decide what constitutional standard governs a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other "seizure" of his person. We hold that such claims are properly analyzed under the Fourth Amendment's "objective reasonableness" standard, rather than under a substantive due process standard.
>
> * * *
>
> <u>We reject this notion that all excessive force claims brought under § 1983 are governed by a single generic standard....In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force....In most</u> instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and

-14-

Case 1:07-cv-00011    Document 66    Filed 05/04/09    Page 14 of 18 PageID #: 915

unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard.

* * *

Differing standards under the Fourth and Eighth Amendments are hardly surprising: the terms "cruel" and "punishment" clearly suggest some inquiry into subjective state of mind, whereas the term "unreasonable" does not. Moreover, the less protective Eighth Amendment standard applies "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." . . . The Fourth Amendment inquiry is one of "objective reasonableness" under the circumstances, and subjective concepts like "malice" and "sadism" have no proper place in that inquiry.

490 U.S. at 388, 393-94, 398-99 (emphasis added) (footnote omitted).

As to how the reasonableness standard is to be applied for these claims, the Court listed several factors and considerations.

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it...."[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," however, its proper application requires careful attention to the facts and circumstances of each particular case, including the <u>severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight</u>....

<u>The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight</u>....The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested,...nor by the mistaken execution of a valid search warrant on the wrong premises....With respect to a claim of excessive force, the same standard of reasonableness at the moment

-15-

> applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,"...violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.
>
> ...An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional...

Graham, 490 U.S. at 396-97 (emphasis added) (citations omitted).

In Patrick v. City of Detroit, 906 F.2d 1108 (6th Cir. 1990), the Court of Appeals further explained as to the analysis of use of force claims:

> The reasonableness standard requires balancing the extent of the intrusion on the fourth amendment interests of the person arrested against the government's interest in effective law enforcement. The correct focus of the fourth amendment question is whether, from the perspective of a reasonable officer, who many times must make split-second decisions, the force used was reasonable under the circumstances. This is a fact-specific inquiry that depends on factors such as the severity of the crime at issue, whether the suspect poses a threat to anyone, and whether the suspect is attempting to escape or is resisting arrest.

Id. at 1115.

Defendants argue that they are entitled to summary judgment because of the great risk created by Plaintiff's behavior that justified the high degree of force they admitted used in subduing Plaintiff. Specifically, Defendants allege that Plaintiff's resisting of the frisk, pushing of Defendant Kash, and subsequent attempts to resist arrest all justified the application of the Taser, chemical spray, and physical force. Defendants contend that given the Plaintiff's actions, Defendants used only the amount of force necessary to effect Plaintiff's arrest, and thus are protected by qualified immunity.

Given the record before the Court, Defendants' motion for summary judgment for the

excessive force claims must be denied. Plaintiff has offered testimony that he never hit the Defendant Officers or resisted the frisk by Defendant Kash. Plaintiff's version of events contends that Defendant Kash began choking Plaintiff after the Plaintiff merely wiped his mouth.

"[S]ummary judgment would not be appropriate if there is a factual dispute (i.e. a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violated clearly established rights." Buckner v. Kilgore, 36 F.3d 536, 540 (6th Cir. 1994) (quoting Poe v. Haydon, 853 F.2d 418, 425 (6th Cir. 1988)). The question of whether qualified immunity attaches in excessive force claims turns on whether the officer's mistake was reasonable. Saucier v. Katz, 533 U.S. 194, 205 (2001). With such a stark dispute as to how the struggle between the Plaintiff and the Defendants began and escalated, Defendants' claim of qualified immunity must be rejected.

Additionally, Defendants filed an expert witness opinion by Robert F. Thomas regarding the reasonableness of the Defendant Officers' use of force. However, the expert testimony of Mr. Thomas on reasonableness is not conclusive. Expert testimony will not be considered on the ultimate questions of law. Berry v. City of Detroit, 25 F.3d 1342, 1353-54 (6th Cir. 1994); United States v. Zipkin, 729 F.2d 384, 387 (6th Cir. 1984). The Sixth Circuit has previously rejected expert testimony on the reasonableness of excessive force. Hubbard v. Gross, 199 Fed.Appx. 433, 442-43 (6th Cir. 2006). As such, the Court will not consider Mr. Thomas's expert report, and Plaintiff's motion to strike the expert report (Docket Entry No. 60) should be granted.

Given the stark dispute as to the facts of the encounter between the parties here, summary judgment as to the excessive force claims for either party would be inappropriate. As such,

Plaintiff's motion for summary judgment as to the excessive force claims should be denied. Finally, Defendants' motion for summary judgment as to the excessive force claims should be denied.

### III. Conclusion

For the above-stated reasons, the Court concludes that Defendants' motion for summary judgment (Docket Entry No. 44) should be granted in part and denied in part. Additionally, Plaintiff's motion for summary judgment (Docket Entry No. 48) should be denied. Finally, Plaintiff's motion to strike (Docket Entry No. 60) should be granted.

An appropriate order is filed herewith.

**ENTERED** this the 6th day of May, 2009.

WILLIAM J. HAYNES, JR.
United States District Judge